UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cr-138 |
| | ) | |
| SARAI CARILLO | ) | |

## GOVERNMENT'S CONSOLIDATED MOTIONS IN *LIMINE*

Comes now the United States of America, by its counsel, Adam L. Mildred, United States Attorney for the Northern District of Indiana, through Thomas M. McGrath, Assistant United States Attorney, and respectfully submits the below consolidated motions in *limine:*

*Factual Background:*

On October 13, 2025, Enforcement and Removal agents with the Department of Immigration and Customs Enforcement (ICE) attempted to conduct a traffic stop on Rosario Carrillo-Lopez as part of an investigation into Carrillo-Lopez's legal status within the country. Carrillo-Lopez thereafter fled from law enforcement and, in doing so, it is alleged he rammed his vehicle into an ICE vehicle as part of the escape in violation of 18 USC 111(a)(1).    The above captioned case stems from the execution of a federal arrest warrant for Carrillo-Lopez, the Defendant's father, on October 23, 2025.    Agents with

1

Homeland Security Investigations and the United States Marshals, while engaged in their official duties, approached Rosario Carrillo-Lopez's known Gary, Indiana residence and knocked repeatedly on the door informing those within they had an arrest warrant for Rosario Carillo-Lopez.  Law enforcement viewed movement inside and noted someone turned the lights off. At that time, they decided to breach the door and once they did so encountered one of the Defendant's siblings in the doorway. That sibling was pulled out of the door's threshold by law enforcement so they could make entry to execute the arrest warrant.  Within the home, law enforcement was confronted by the Defendant and one of her siblings, a minor. Defendant repeatedly demanded to see the warrant.  The indictment alleges that the Defendant forcibly and physically impeded the officers from continuing to execute the arrest warrant by standing in their way and physically pushing one of the agents back towards the front door all while her father, the subject of the arrest warrant, attempted to escape out the back of the residence.  The Defendant's minor sibling was also charged with assaulting the law enforcement officer in a state prosecution. Defendant was removed from the home by officers as they completed their search for her father.  Eventually law enforcement was able to execute the arrest warrant finding Rosarillo Carrillo-Lopez hiding on the roof of the residence as part of an attempt to flee.  Defendant is charged with Title 18

2

United States Code Section 111(a)(1) for forcibly assaulting, resisting, opposing, impeding and interfering with a federal law enforcement officer while engaged in their official duties and doing so through a physical touching of the officer. Defendant is also charged with Title 18 United States Code Section 2231(a) for forcibly assaulting, resisting, opposing or interfering with a person authorized to make searches and seizures while engaged in those duties.

## 1. Exclusion of Out of Court Statements introduced by a Defendant

The Government moves to preclude Defendant from eliciting testimony or presenting evidence of her own out-of-court statements. Such statements are hearsay pursuant to Federal Rule of Evidence 801 and are not "admissions by a party opponent" pursuant to Rule 801(d)(2) when offered by the party himself/herself, rather than the party's "opponent." *United States v. Doxy*, 225 F. App'x 400, 402 (7th Cir. 2007) (recognizing that a party's self-serving, exculpatory, out-of-court statement generally constitutes inadmissible hearsay); *United States v. Davenport*, 929 F.2d 1169, 1175 (7th Cir. 1991) ("[Defendants'] statements, to the extent exculpatory, would not have been admissible at their trial; they would have been hearsay statements not coming within any of the exceptions to the hearsay rule."). That is true whether

Defendant attempts to offer the statement in his case-in-chief or to elicit it from a prosecution witness on cross-examination. *United States v. Ricketts*, 146 F.3d 492, 497 (7th Cir. 1998) (district court properly refused to allow defendant to introduce defendant's self-serving statements through the form of an FBI report, after defendant had the opportunity to extensively cross examine the FBI agent).

Allowing a defendant to offer her statements into evidence through other witnesses would "effectuate an end-run around the adversarial process by, in effect," giving her the chance to "testify[] without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury." *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005); *see also*, *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) ("If the district court were to have ruled in his favor, [the defendant] would have been able to place his exculpatory statements 'before the jury without subjecting [himself] to cross-examination, precisely what the hearsay rule forbids.'"); *United States v. Kimball*, 15 F.3d 54, 55-56 (5th Cir. 1994) ("A defendant seeking to testify and make exculpatory statements must face cross-examination. That is a basic rule of our adversary system.").

In keeping with those rules, the United States respectfully requests an *in limine* ruling making clear that Defendant's statements, if offered by the

4

defense for their truth, are inadmissible hearsay and may not be admitted unless Defendant takes the stand and subjects herself to cross-examination.

Attempts by a defense counsel to elicit such testimony, even if an objection is made and sustained, can be damaging to the trial because it could leave the jury with a false impression that the defense is in possession of appropriate evidence they want the jury to hear and the Government or Court, rather than the rules of evidence, are precluding the evidence from being heard. In this matter, the Defendant made some statements on the morning of the arrest and further has made comments to the media since the arrest occurred.   Accordingly, the Government requests that the Court preclude the defense seeking to elicit any testimony as to any out-of-court statement made by Defendant. The Government also asks that if Defendant attempts to elicit such information, she raise it with the Court prior to trial or at sidebar before raising it before the jury.

### 2.  Exclusion of Forms of Argument or Evidence Designed to Elicit Jury Nullification

The Government requests an order precluding Defendant from making arguments, admitting evidence, or framing questions in the presence of the jury that are designed to induce jury nullification.

The law is plain that it is improper for a defendant to suggest in any way that the jury should acquit the defendant even if it finds that the Government has met its burden of proof. *See, e.g., United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant") (*citing United States v. Kerley*, 838 F.2d 932, 938 (7th Cir. 1988), and *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993)); *see also United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification 'is not to be positively sanctioned by instructions,' but is to be viewed as an 'aberration under our system.'") (*quoting United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983)); *see generally Scarpa v. Dubois*, 38 F.3d 1, 11 (1st Cir. 1994) (noting, "defense counsel may not press arguments for jury nullification in criminal cases"); *Sepulveda*, 15 F.3d at 1190 ("neither the court nor counsel should encourage jurors to exercise [nullification] power. . . . A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification."); *United States v. Trujillo*, 714 F.2d 102, 105 (11th Cir. 1983) ("Appellant's jury nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their caprice. While we

6

recognize that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath"); Seventh Circuit Committee Federal Criminal Jury Instruction 1.01 (2023).

The Government seeks by this motion to preclude any argument or questioning, no matter what its form, that in effect "encourage[s] [the] jury to acquit under any circumstances regardless of the applicable law or proven facts." *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983). Some examples that may arise in this particular case are as follows:

*Arguments that the Immigration Policy is improper, Enforcement of the Policy has been executed improperly, or that the jury should consider incidents or events other than those at issue in this case.*

The trial in this case will concern the execution of an arrest warrant for the Defendant's father at her residence within the Northern District of Indiana. The arrest warrant stemmed from an encounter between Rosario Carrillo and Enforcement and Removal Operations (ERO) officers who work for United States Immigration and Customs Enforcement (ICE) and their attempts to take him into custody for being illegally within the country. This encounter is the subject of a separate criminal case. See *United States v. Carrillo-Lopez*, 2:25-cr-140. The Government seeks by this motion to preclude the Defendant from directly or indirectly seeking to implore jurors through argument and questioning to acquit based on potential jurors' sentiments

7

about immigration policy or the actions of immigration officers unrelated to this case.  Specifically, the Government requests that this court preclude the Defendant and Defense Counsel from referencing extrinsic and unrelated incidents and events involving ICE agents and Border Patrol agents, some of which have had significant coverage in the press or to make arguments meant to attack the policy of deportation as a whole.  Should the Defendant believe anything outside the specific events of this case are relevant to her defense, the Government requests that this Court order the defense to present that evidence to the Court and the Government, outside the presence of the jury and prior to trial, so that the Court can rule on its relevance to the elements that must be proven in this case.

*Allegations or Claims of Outrageous Government Conduct*

The Court should also preclude any evidence or argument related to so-called "outrageous government conduct." The government is aware that the Defendant's family has made allegations against law enforcement officers in this matter in the press.  These allegations seem to center around incidents that were alleged to occur outside the presence of the Defendant involving some of her other family members.  Arguments pertaining to governmental misconduct are improper for two reasons. First, and most fundamentally, the Seventh Circuit has repeatedly held that "[o]utrageous government conduct is

8

not a defense in this circuit." *United States v. Stallworth*, 656 F.3d 721, 730 (7th Cir. 2011); see also *Conley v. United States*, 5 F.4th 781, 799 (7th Cir. 2021) (describing the "uniform wall of precedent" rejecting the defense and citing cases); *United States v. Boyd*, 55 F.3d 239, 241-42 (7th Cir. 1995) ("'[T]he doctrine [of outrageous governmental misconduct] is moribund.' 'Stillborn' might be a better term, for it never had any life; and it certainly has no support in the decisions of this court, which go out of their way to criticize the doctrine." (quoting *United States v. Santana*, 6 F.3d 1, 4 (1st Cir. 1993)) (second alteration in original)).   Second, "the issue of outrageous government conduct is not an issue for the jury," but instead a matter of law that must be raised in the form of a pretrial motion for determination by the Court. See *United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) ("All of the circuits that have considered the question have held that the issue of outrageous government conduct is not a jury question.") (collecting cases). Accordingly, defendant should be precluded from defending her case by attacking the propriety of the government's conduct.

Should the Defendant believe any such avenue of inquiry or argument is relevant, the Government asks that the Court order that Defendant raise such a claim prior to trial and outside the presence of the jury.

*"Golden Rule" Argument*

Defendant should further be precluded from making a so-called "Golden Rule" appeal, i.e., that the jurors should place themselves in Defendant's shoes. The Seventh Circuit held such arguments to be improper, regardless of whether they are uttered by the government or defense. See *United States v. Roman*, 492 F.3d 803, 805-06 (7th Cir. 2007) (affirming exclusion of defendant's proposed argument that "jurors should put themselves in his shoes and consider 'There but for the grace of God go I.'"); *United States v. Teslim*, 869 F.2d 316, 328 (7th Cir. 1989) (finding improper "Golden Rule" argument where prosecutor stated during rebuttal, "I ask you, ladies and gentlemen, if it happened to you and you had nothing to hide[.]"). "[A] 'Golden Rule' appeal . . . 'is universally recognized as improper because it encourages the jury to depart from the [position of] neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'" *Roman*, 492 F.3d at 803 (quoting Teslim, 869 F.2d at 328). Defendant should therefore be precluded from making such an argument to the jury.

*Vindictive Prosecution or Arrest*

In this case, the Defendant has been interviewed by media outlets and made claims that it was her belief that charges were brought "because she repeatedly asked for a warrant."

10

See https://www.chicagotribune.com/2025/10/29/dad-mom-and-u-s-citizen-son-14-still-held-in-custody-after-gary-immigration-raid/

Claims of vindictive prosecution are irrelevant to the merits. The subjective intentions or motivations of a government agent are extraneous. See, e.g., *United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994) (noting that, even in the context of an entrapment defense, it was proper for the trial court to prohibit the defense from "mount[ing] an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant").

"In the ordinary case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). Accordingly, evidence bearing on the government's decision to prosecute is "extraneous and collateral" and, thus, properly excluded from trial. *United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument"). Accordingly, evidence and argument related to these issues, in any form, should be barred by the Court and any attempts to explore such an

11

argument should be first raised with the Court prior to trial and outside the presence of the jury.

### 3. Exclusion of Argument, Questions or Reference to any Penalties Defendant may face

The Government requests the Court bar the presentation of any argument or evidence regarding penalties Defendant may face in any way, whether related to any potential maximum penalty, or in any other regard.

In *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997), the Seventh Circuit considered this issue when the defendant appealed the district court's refusal to grant his pretrial request to advise the jury about the sentencing consequences of a guilty verdict. In making this argument, the defendant contended that the jury, upon learning of his mandatory life sentence, would have deemed the penalty too great and exercised its unreviewable power to acquit. *Id.* The Seventh Circuit held that the district court correctly refused to allow the defendant to argue about his potential punishment. *Id.* In so holding, the Seventh Circuit stated that the practice of informing juries about the sentencing consequences of their verdicts is strongly disfavored. *Id.* The Seventh Circuit went on to explain that the United States Supreme Court has stated that "unless a jury has a role in sentencing, such as in capital sentencing proceedings, jurors should be instructed not to consider a defendant's potential

12

sentence during deliberations." *Id.* (see *Shannon v. United States*, 512 U.S. 573, 579 (1994)). The Supreme Court in *Shannon* "also pointed out that jurors generally 'are not informed of mandatory minimum or maximum sentences.'" *Id.,* quoting *Shannon*, 512 U.S. at 586-87; *see also, Aliwoli v. Carter*, 225 F.3d 826, 830 (7th Cir. 2000, quoting *Shannon* at 579) ("courts should withhold information about punishment from the jury because the jury's role is typically restricted to deciding whether the defendant is guilty of the crime charged. Since the jury only determines whether the defendant is guilty or not guilty, 'providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion.'"); *United States v. Richardson*, 130 F.3d 768, 778 (7th Cir. 1998), *vacated and remanded on other grounds in Richardson v. United States*, 526 U.S. 813 (1999) (rejecting the defendant's claim that he should have been able to argue punishment during closing argument with the simple holding that "arguing punishment to a jury is taboo"); *United States v. Andreas*, 23 F.Supp.2d 835, 852 (N.D. Ill. 1998) ("As a matter of law, potential penalties are irrelevant as to guilt and thus are inadmissible.").

In this case, Defendant is facing a maximum of eight years in prison on count one and three years on count two. Because the jury has no role to play

in the sentence Defendant could receive upon conviction, the Government requests the Court enter a pretrial ruling prohibiting the presentation of argument or evidence concerning the potential penalties faced by Defendant upon conviction.

### 4. Exclusion of Discovery Requests or Comments Regarding Discovery in the Jury's Presence

The Government further moves that this Court preclude the parties from requesting discovery from witnesses or opposing counsel, moving the Court for such discovery, or otherwise commenting on discovery matters, in the presence of the jury. Such requests from counsel in front of the jury are inappropriate and may create the impression that one side has acted inappropriately. These requests, if appropriate, can easily be made to the Court or opposing counsel outside the presence of the jury with no prejudice resulting to either side. Accordingly, the Government requests that the Court require that all comments relating to discovery be made outside the presence of the jury. This system has been used in other cases and has worked well. The Government believes it is a fair and sensible one to employ here. *See generally Thompson v. Glenmede Trust Co.*, 1996 WL 529693 (E.D.Pa. 1996) ("Rather than focus on the issues in the case, the jury may instead be misled by the irrelevant side issues of the discovery process. Therefore, the Court will not permit either

14

party to refer to the discovery process in the presence of the jury at trial").

### 5. Exclusion of Argument Explaining or Defining Reasonable Doubt

The Seventh Circuit has clearly and consistently held that reasonable doubt is a term that should not be defined by the trial court or counsel. *See e.g., United States v. Blackburn,* 992 F.2d 666, 668 (7th Cir. 1993) (noting that definitions of reasonable doubt have a likelihood of confusing juries more than the simple words themselves.) In *United States v. Thompson,* 117 F.3d 1033 (7th Cir. 1999), the Seventh Circuit affirmed the district court's decision to prevent defense counsel from explaining reasonable doubt to the jury noting "the law is clear in this circuit that it is improper for attorneys to attempt to define the term." The pattern instructions for the Seventh Circuit also make clear that it is inappropriate for trial counsel to provide a definition of reasonable doubt. See Pattern Crim. Jury Instr. 7th Cir. 1.04 (2023).

Accordingly, the Government requests that the Court order Defendant not to define reasonable doubt during their opening statements or closing arguments.

### 6. Exclusion of Evidence of Prior Good Acts and Lack of Criminal History

The defendant has not been convicted of a felony offense or crime of dishonesty. In fact, she has no known criminal history. However, she and her

15

attorney should be precluded from mentioning the lack of criminal history in opening statement, closing argument or introducing such evidence during direct or cross-examination.

Evidence of a person's character is generally not admissible to prove that she acted in conformity therewith on a particular occasion. Fed.R.Evid. 404(a). In a criminal case, an accused may not introduce evidence of her own good character to suggest the inference that someone with good character would not have committed the crime with which the accused is charged. Fed.R.Evid. 404(a)(1). In this context, character evidence may only be presented through either reputation or opinion testimony. Fed.R.Evid. 405.1 Testimony about a lack of criminal history is equivalent to "testimony as to multiple instances of good conduct, and its admission would appear to violate a strict reading of Rule 405(a)." *Government of Virgin Islands v. Grant*, 775 F.2d 508, 512 (3rd Cir. 1985).

Character evidence must relate to a pertinent trait and must be in the form of opinion or reputation testimony. *See,* Fed. R. Evid. 404(a) (character evidence must be related to a defendant's pertinent trait); Fed. R. Evid. (405)(a) (character evidence, where admissible "may be proved by testimony about the person's reputation or by testimony in the form of an opinion"). Defendant should not be permitted to offer testimony or evidence of instances of conduct

16

offered to establish Defendant's character as a good person because such evidence is not relevant to Defendant's pertinent trait; and even if it were, it does not take the form of opinion or reputation testimony. *See United States v. Navedo Ramirez,* 781 F.3d 563, 569 (1st Cir. 2015); See also, *United States v. Blagojevich,* 08 CR 888 (N.D. Ill., DE# 657) (Norgle, J.) ("That a defendant has led an exemplary life before and after he is charged with stealing his first million dollars may be relevant at a sentencing hearing. It is not relevant on the question of whether his guilt has been proven. This is a principle well recognized in this Circuit.").

Relying upon Rules 403 and 405 of the Federal Rules of Evidence, the district court in *United States v. Morgan,* 2000 WL 1622748, at *10 (E.D. Pa. Oct. 20, 2000) (unpublished opinion) granted a motion in limine barring the defense from presenting evidence of the defendant's lack of criminal history because (1) "whether the defendant has broken the law before has virtually no bearing on whether he did so this time" (2) the defendant could be judged on her "prior actions", (3) "such evidence may mislead the jury" and (4) the evidence may "improperly cause the jury to be sympathetic." See also, *Grant,* 775 F.2d at 512-13 (Indeed, testimony that one has never been arrested is especially weak character evidence; a clever criminal, after all, may never be caught. . . . We also note . . . the relatively low probative value of such evidence,

17

particularly when coming from the defendant, . . .")

Should the Defendant seek to introduce such evidence the Government requests that it be raised with the Court outside the presence of the jury.

WHEREFORE, the Government respectfully requests that the above outlined motions in *limine* be GRANTED.

Respectfully submitted,

ADAM L. MILDRED
UNITED STATES ATTORNEY

By:   */s/ Thomas M. McGrath*
        Thomas M. McGrath
        Assistant United States Attorneys
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana 46320
        Tel:   (219) 937-5500
        Fax:   (219) 852-2770
        Email:   thomas.m.mcgrath@usdoj.gov